GARMAN TURNER GORDON LLP
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: ggarman@gtg.legal
TERESA M. PILATOWICZ, ESQ.
Nevada Bar No. 9605
E-mail: tpilatowicz@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
E-mail: mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: (725) 777-3000
*Counsel to the Debtors*

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF NEVADA

| In re: | Lead Case No.:25-16697-nmc |
|---|---|
| LAS VEGAS COLOR GRAPHICS, INC., | Chapter 11 |
| ☐ AFFECTS LAS VEGAS COLOR GRAPHICS, INC. | *Jointly administered with:* |
| ☐ AFFECTS COLORART, LLC | ColorArt, LLC<br>Case No. 25-16701-nmc |
| ☒ AFFECTS BOTH DEBTORS<br><br>Debtors. | Current Hearing:<br>Hearing Date: January 6, 2026<br>Hearing Time: 9:30 a.m.<br><br>Continued Hearing:<br>Hearing Date: January 13, 2026<br>Hearing Time: 9:30 am |

**STIPULATION FOR CONTINUED INTERIM USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. §§ 105, 361, 363, AND 506, AND FED. R. BANKR. P. 4001(b) AND SCHEDULING A FINAL HEARING**

This Stipulation (this "**Stipulation**") is entered into by and among Debtors and debtors-in-possession Las Vegas Color Graphics, Inc. ("**LVCG**") and ColorArt, LLC ("**ColorArt**"; together with LVCG, the "**Debtors**"), by and through counsel of record, the law firm Garman Turner Gordon LLP, and Aequum Capital Financial II LLC ("**Lender**," and collectively with the

168483.00001/155976591v.3

Debtors, the "**Parties**"), by and through its counsel of record Blank Rome LLP and Schwartz, PLLC. The Parties hereby stipulate and agree as follows:

## RECITALS

**A.    Jurisdiction and Venue.**

1. On November 5, 2025 ("**Petition Date**"), Debtors each filed a voluntary petition for relief under Chapter 11,[1] thereby commencing the above-captioned Chapter 11 cases (the "**Chapter 11 Cases**") before the United States Bankruptcy Court for the District of Nevada (the "**Bankruptcy Court**").

2. Debtors have continued in the possession of their property and operating and managing their business as debtor and debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3. The statutory predicates for the relief sought herein are Sections 361 and 363 of the Bankruptcy Code, Bankruptcy Rule 4001(b), and Local Rule 4001.

4. No trustee or examiner has been appointed and no official committee of unsecured creditors (the "**Committee**") has yet been appointed in the Chapter 11 Cases.

5. This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (D) and (O). Venue of these proceedings is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

**B.    Debtors' Secured Lender.**

6. Without prejudice to the rights of any other party, but in each case subject to the limitations contained in paragraph [7] below, the Debtors represent, admit, stipulate, and agree (collectively, "**Debtors' Stipulations**") as follows:

    a. Debtors and Lender are parties to that certain *Credit and Security Agreement* dated as of June 6, 2024 (as may be amended, restated, supplemented, and otherwise modified from time to time, the "**Credit Agreement**" and,

---

[1] Unless otherwise stated, all "**Chapter**" and "**Section**" references are to title 11 of the U.S. Code ("**Bankruptcy Code**"), all references to a "**Bankruptcy Rule**" are to the Federal Rules of Bankruptcy Procedure, and all references to "**Local Rule**" are to the Local Rules of Bankruptcy Practice for the U.S. District Court for the District of Nevada.

168483.00001/155976591v.3

collectively with all agreements, documents, notes, mortgages, security agreements, pledges, guarantees, subordination agreements, deeds, instruments, indemnities, indemnity letters, fee letters, assignments, charges, amendments, and any other agreements delivered pursuant thereto or in connection therewith, including the "Loan Documents" as such term is defined in the Credit Agreement, "**Loan Documents**"), pursuant to which Lender provided a revolving credit facility to Debtors in the principal amount of up to $30,000,000 (the "**Revolving Loan**").  All indebtedness, liabilities, and obligations arising under the Loan Documents, specifically including all "Obligations" as defined in the Credit Agreement are referred to herein as "**Obligations**."  Each of the Loan Documents is valid, binding, and, subject to applicable bankruptcy law, enforceable against the Debtors.

b. As of the Petition Date, the Debtors were justly and lawfully indebted and liable under the Loan Documents, jointly and severally, in the aggregate principal amount of $25,276,906.04 in respect of the Revolving Loan pursuant to, and in accordance with the Credit Agreement and the other Loan Documents, plus accrued and unpaid interests, fees, costs and expenses (including counsel, financial advisors, consultants, accountants, to the extent applicable, chargeable or reimbursable under the Loan Documents) with respect to each of the foregoing.

c. Pursuant to and as more particularly described in the Loan Documents, the Obligations are secured by, among other things, first priority liens on, security interests in, and assignments and pledges of (collectively, "**Prepetition Liens**"), all of the Debtors' right, title, and interest in the "Collateral" (as defined in the Credit Agreement) (hereafter, "**Prepetition Collateral**").

d. The Prepetition Liens are (i) valid, binding, perfected, duly recorded and enforceable first-priority liens on, and security interests in, all of the Debtors' respective right, title, and interest in, and to, the Prepetition Collateral The

168483.00001/155976591v.3

Prepetition Liens were granted to Lender for fair consideration and reasonably equivalent value and were granted in consideration of the making and/or continued making of loans, commitments, and/or other financial accommodations under the Loan Documents.

e. All of the Debtors' cash, whether existing as of the Petition Date or thereafter, wherever located (including, without limitation, all cash on deposit or maintained by the Debtors in any account or accounts), constitutes or will constitute "cash collateral" of the Lender within the meaning of section 363(a) of the Bankruptcy Code (the "**Cash Collateral**").

7. Subject to paragraphs 8 of this Stipulation, the Debtors' Stipulations contained in paragraph 6 shall be binding in all circumstances upon the Debtors upon entry of the Interim Order (as defined below), and upon their Estates and any successor thereto in all circumstances for all purposes immediately upon entry of a final order authorizing use of Cash Collateral (the "**Final Order**").

8. The Debtors' Stipulations shall be binding upon each other party-in-interest, except to the extent such party in interest *first* obtains standing (including any chapter 11 trustee or if the Chapter 11 Cases are converted to cases under chapter 7 prior to the expiration of the Challenge Period, the chapter 7 trustee in such Successor Case), by no later than the date that is forty-five (45) calendar days following the later of the date of entry of the Interim Order or, as it relates to the Committee, the date of appointment of the Committee (such time period shall be referred to as the "**Challenge Period**") and *second*, obtains a final, non-appealable order in favor of such party-in-interest sustaining any such Challenge (as defined below) in any such timely-filed contested matter or adversary proceeding (any such Challenge timely brought for which such a final and non-appealable order is so obtained, a "**Successful Challenge**").

9. For the purposes of this Stipulation and the Interim Order, a "**Challenge**" shall mean a timely and properly filed contested matter or adversary proceeding challenging or otherwise objecting to the admissions, stipulations, findings, or releases set forth in this Stipulation and the Interim Order, including the stipulations contained in the Debtors'

168483.00001/155976591v.3

Stipulations, including but not limited to those in relation to (i) the amount, validity, extent, priority, or perfection of the mortgages, security interests, and liens of Lender with respect to the Prepetition Collateral; and (ii) the validity, allowability and priority of the Obligations.

10. The Challenge Period shall terminate on the date that is the next calendar day after the expiration of the Challenge Period in the event that either no Challenge is raised during the Challenge Period or, with respect only to those parties who file a Challenge, such Challenge is fully and finally adjudicated (collectively, the "**Challenge Period Termination Date**"). The filing of a motion seeking standing to file a Challenge before expiration of the Challenge Period, which attaches a proposed Challenge, shall extend the Challenge Period solely with respect to that party until two (2) business days after this Court approves the standing motion, or such other time period ordered by this Court in approving the standing motion and solely with respect to the Challenges asserted in the complaint. Except as otherwise expressly provided herein, from and after the Challenge Period Termination Date and for all purposes in these Chapter 11 Cases and any Successor Cases (and after the dismissal of these Chapter 11 Cases or any Successor Cases), and without further notice, motion, or application to, order of, or hearing before this Court, (1) any and all payments made to or for the benefit of Lender or otherwise authorized by the Interim Order (whether made on or after the Petition Date) shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense, disallowance, recovery, or avoidance by any party in interest, (2) any and all such Challenges by any party-in-interest shall be deemed to be forever released, waived, and barred, (3) all of the Obligations shall be deemed to be fully allowed claims within the meaning of section 506 of the Bankruptcy Code, and (4) the Debtors' Stipulations shall be binding on all parties in interest in these Chapter 11 Cases or any Successor Cases, including any Committee or chapter 11 or chapter 7 trustee. Notwithstanding the foregoing, to the extent any Challenge is timely asserted, the Debtors' Stipulations and the other provisions in clauses (1) through (4) in the immediately preceding sentence shall nonetheless remain binding and preclusive on any Committee and on any other party-in-interest from and after the Challenge Period Termination Date, except to the extent that such Debtors' Stipulations or the other provisions in clauses (1) through (4) of the immediately preceding

168483.00001/155976591v.3

sentence were expressly challenged in such Challenge and such Challenge becomes a Successful Challenge.

11. Notwithstanding any provision to the contrary herein, nothing in the Interim Order shall be construed to grant standing on any party in interest, other than the Committee, to bring any Challenge on behalf of the Debtors' Estates. The failure of any party-in-interest to obtain an order of this Court prior to the Challenge Period Termination Date granting standing to bring any Challenge on behalf of the Debtors' Estates shall not be a defense to failing to commence a Challenge prior to the Challenge Period Termination Date as required under paragraphs 8 and 9 of this Stipulation or to require or permit an extension of the Challenge Period Termination Date.

C. **The Company Revenues.**

14. Debtors have developed projections of revenues and operational expenses and administrative fees and costs related to the Chapter 11 Cases and weekly projections (as may be updated or modified from time to time with Lender's consent, the "**Budget**") for the period commencing December 26, 2025 through February 27, 2026 (the "**Interim Period**"), attached hereto as **Exhibit 1**.

15. Debtors' continued operations depend upon Debtors' ability to use their continued revenues the ordinary course of business. Debtors cannot meet their ongoing post-petition obligations unless they have access to their revenues, and in the absence of such use, immediate and irreparable harm will result to Debtors, their Estates, and their creditors, and will render an effective and orderly reorganization of Debtors' business impossible.

16. On November 18, 2025, the Court entered an *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 363, and 506, and Fed. R. Bankr. P. 4001(B) For Entry of Interim and Final Orders Authorizing the Use of Cash Collateral, and Scheduling a Final Hearing* [ECF No. 99 in 25-16697; ECF No. 100 in 25-16701]; (the "**Initial Interim Order**"). A final hearing was set for December 3-4, 2025, which has been continued by agreement of the Parties to January 13, 2026, and is expected to be further continued (the "**Final Cash Collateral Hearing**").

168483.00001/155976591v.3

17. On December 3, 2025, Debtors filed the *Motion for Entry of an Order (I) Authorizing Debtors to (A) Employ and Retain Silverman Consulting LLC to Provide Debtors with a Chief Restructuring Officer and other Financial Advisory and Management Services Pursuant to 11 U.S.C. § 363(b); (B) Designating Michael Silverman as Chief Restructuring Officer; and (II) Granting Related Relief* ("**CRO Motion**"), seeking Court approval of the retention of Michael Silverman as a chief restructuring officer (the "**CRO**") for the Debtors, which was approved on December 19, 2025 [ECF No. 221].

18. Debtors have also retained Ted Burr of MAC Restructuring as their independent director and manager, as applicable. See ECF No. 212.

19. Lender has consented to allow Debtors to continue to utilize the Cash Collateral during the Interim Period commencing on December 26, 2025 through the earlier of February 27, 2026 or the Final Cash Collateral Hearing pursuant to the terms set forth below subject to the entry of an order by the Bankruptcy Court approving this Stipulation.

## STIPULATION

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, stipulate, subject only to entry of an order approving this Stipulation, substantially in the form of the interim order attached hereto as **Exhibit 2** ("**Interim Order**"), as follows:

1. Lender consents to Debtors' use of the Cash Collateral during the Interim Period in order for Debtors to pay expenses and costs in accordance with the Budget, subject to a 15% variance for each line item and 10% in the aggregate (defined as a "**Material Variance**") for the preceding one-week period. The Budget may be updated or modified from time to time with Lender's prior written consent. Any Material Variances from the Budget require Lender's prior written consent, absent which no over-budget disbursements may be made. Except with Lender's written consent, there shall be: (i) no intercompany transfers from the Debtors, (ii) no sweeps or setoffs involving affiliates, and (iii) no cross-collateralization among the Debtors and any affiliates.

168483.00001/155976591v.3

2. As adequate protection for any diminution in value of Lender's interest in the Prepetition Collateral (including Cash Collateral) during the Interim Period resulting from Debtors' use of Cash Collateral, Lender is granted the following (collectively, the "**Adequate Protection**"), only to the extent of diminution of value in the Cash Collateral:

    a. *Replacement Liens*. Pursuant to sections 361 and 363 of the Bankruptcy Code, continuing, valid, binding, automatically perfected, and enforceable postpetition security interests in and liens (the "**Replacement Liens**") on all of the Debtors' right, title and interest in and to all postpetition cash, accounts receivable, inventory and identifiable proceeds and products of the Prepetition Collateral (the "**Postpetition Collateral**"), in each case to the same extent, validity and priority that existed as of the Petition Date with respect to the Prepetition Collateral, subject only to (i) the Carve-Out (as defined below) and (ii) any valid, perfected and unavoidable liens that were senior to Lender's liens as of the Petition Date.

    b. *Exclusions from Replacement Liens*. The Replacement Liens shall not attach to (i) any causes of action arising under sections 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or similar state law claims (collectively, the "**Avoidance Actions**") or (ii) the proceeds thereof

    c. *Adequate Protection Superpriority Claim*. Lender shall be granted, as further adequate protection, an allowed superpriority administrative expense claim in each of the Chapter 11 Cases under section 507(b) of the Bankruptcy Code (the "**Adequate Protection Claim**") with priority over any and all other administrative expenses, administrative expense claims, and unsecured claims against the Debtors or their Estates, now existing or hereafter arising, of any kind or nature whatsoever as to and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, subject only to the Carve-Out.

    d. As used in this Stipulation, the "Carve-Out" means an amount equal to the sum of: (1) statutory fees payable to the United States Trustee, (2) fees payable to the clerk of the Bankruptcy Court, (3) unpaid, payable pursuant to any interim

168483.00001/155976591v.3

compensation procedures approved by the Court, and/or allowed fees and expense of the CRO up to the amount provided in the Budget for the CRO, and (4) unpaid, payable pursuant to any interim compensation procedures approved by the Court, and/or fees and expenses of the Debtors' retained professionals (a) incurred on or prior to the date on which the Carve-Out Trigger Notice (as defined below) is delivered, through the Interim Period up to the amount provided in the Budget for professional fees and any amounts after the Interim Period as determined by the Parties, which amounts shall be segregated in a separate account (the "**Segregated Account**") on a weekly basis and (b) incurred after the first business day following the date on which the Carve-Out Trigger Notice, subject to a cap of $25,000. "**Carve-Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by Aequum to the Debtors' counsel and the United States Trustee following the occurrence and during the continuation of an event of default under this Stipulation that has not been cured.

e. For the avoidance of doubt, GTG is currently holding a retainer (the "**GTG Retainer**") that GTG contends was paid by a third-party and is not Cash Collateral, which Lender disputes. With respect to the GTG Retainer:

   i. Nothing provided herein shall impair Lender's rights with respect to the GTG Retainer to the extent it is determined that such funds were Lender's Cash Collateral. To the extent that Lender initiates a challenge within thirty (30) days of the Interim Order and the GTG Retainer is found to be cash collateral of Lender, it shall be returned to the Debtors, and GTG may apply funds from the Segregated Account;

   ii. To the extent that the GTG Retainer is not found to be Lender's Cash Collateral, it shall not be subject to recovery on account of the superpriority administrative expense claim under section 507(b) or otherwise;

168483.00001/155976591v.3

      iii. To the extent GTG's fees are payable pursuant to the interim compensation order or allowed before a determination as to the GTG Retainer is made, GTG shall be permitted to apply funds from the Segregated Account and, after such determination, shall apply the GTG Retainer funds first; and

      iv. At the end of the Interim Period, the CRO and GTG will negotiate a go-forward budget, inclusive of a further professional fee carve-out.

Any expenses paid during the Interim Period pursuant to the Budget in accordance with the Interim Order shall, upon payment thereof, be free and clear of any Adequate Protection Claims and/or Adequate Protection Liens and shall not be subject to recovery by Lender or any Chapter 7 or Chapter 11 trustee or other person or entity on account of any unpaid Adequate Protection Claim.

  f. *Periodic Payments*. During the Interim Period, Debtors shall pay to Lender, as additional Adequate Protection, (1) monthly cash payments of interest at the non-default contract rate, in accordance with the Loan Documents, and (2) to the extent Lender is oversecured, the reasonable and documented fees, costs, and expenses of Lender's legal counsel reasonably incurred in connection with the Debtors' cases and the protection of Lender's interests, together with reasonable and documented costs of appraisals and collateral examinations as described herein. Such fees, costs, and expenses shall be subject to review by the United States Trustee and/or the Bankruptcy Court; provided, however, that invoices of Lender's professionals may be summary and redacted invoices providing only the total aggregate number of hours billed and a summary description of services provided and expenses incurred by the applicable professional, and shall be subject to all applicable privilege and work product doctrines.

  g. Debtors shall provide Lender with timely, detailed, and accurate financial reporting regarding their operations, cash flows, and compliance with the Budget, including explanations for any Material Variances. Unless otherwise agreed, such

168483.00001/155976591v.3

reporting shall include (i) weekly cash reports delivered within three (3) days after week-end; and (ii) weekly budget-to-actual variance reports delivered within three (3) business days after the end of each week. Lender may request reasonable supplemental reporting, which the Debtors shall provide promptly.

3. Upon twenty-four hours' written notice by Lender to Debtors and their counsel, Debtors shall permit Lender or its agents, reasonable access, during normal business hours, to conduct field examinations and inspect inventory and other collateral at the Debtors' premises.

4. Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral, as applicable; provided, however, that subject to entry of the Final Order, other secured creditors' rights, if any, this paragraph 4 shall not impair the rights, if any, of other secured creditors to assert such doctrines solely as between such creditors and Lender.

5. Subject to the entry of the Final Order, Lender shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code and the "equities of the case" exception shall not apply to Lender.

6. Upon any asserted default under the Interim Order, Lender shall provide written notice (a "**Default Notice**") to the Debtors, their counsel, and counsel to any Committee (if appointed), describing the alleged default in reasonable detail. The Debtors shall have three (3) business days following receipt of the Default Notice (the "**Cure Period**") to cure the alleged default or dispute its existence. If the default is not cured or resolved within the Cure Period, Lender may seek expedited relief from the automatic stay and/or termination of the Debtors' use of Cash Collateral upon not less than three (3) business days' notice (or such shorter notice as the Bankruptcy Court may allow).

7. The Debtors' execution of this Stipulation and agreement with regard to the consensual use of Cash Collateral during the Interim Period will be without prejudice to Debtors' right to seek further use of Cash Collateral consistent with Section 363 of the Bankruptcy Code solely in the event the Debtors do not obtain entry of a consensual final order on Cash Collateral Use; provided, however, that nothing provided herein shall be deemed or construed as (a)

168483.00001/155976591v.3

Lender's consent to any such use, (b) an admission that the Debtors are entitled to use Cash Collateral absent Lender's consent, or (c) a waiver or limitation of any rights, remedies, objections, or defenses of Lender with respect to any such request for use of Cash Collateral.

8. The Debtors, through the CRO, shall use commercially reasonable efforts to seek to obtain debtor-in-possession financing for a partial pay-down of Lender's claim, on terms acceptable to Lender, and seek a restructuring, sale, refinancing, or other value-maximizing transaction or series of transactions that would result in a repayment or refinancing of Lender's claims on terms approved by the Bankruptcy Court. The Parties may agree, in connection with the Final Order or separate stipulation, on reasonable case milestones, subject to extension by agreement of the Parties or by the Bankruptcy Court for cause.

9. The Debtors' principal, Eran Salu ("**Salu**"), shall execute and deliver to Lender, a forward-looking validity guaranty (the "**Validity Guaranty**"), in form and substance acceptable to Lender and Salu, which shall provide, among other things, that Salu agrees to save Lender harmless and indemnify Lender from and against all loss, damage or injury which Lender may in any manner sustain in whole or in part by reason of any fraud, deceit or criminal act committed by Salu or by any employee of the Debtors at the direction of Salu, or by Lender's reliance on any intentionally and materially false, erroneous, misleading, inaccurate, incorrect or incomplete information furnished by Salu or by any employee of the Debtors at the direction of the Salu.

10. The Court shall schedule the Final Cash Collateral Hearing on such date as determined by the Parties and/or the Court.

11. This Stipulation is subject to and shall be effective only upon entry of the Interim Order by the Court, except that Lender consents to Debtors' continued use of cash collateral consistent with the Initial Interim Order and Budget pending approval of the Interim Order.

12. This Stipulation may be executed and delivered in counterparts, including by a facsimile transmission thereof, each of which shall be binding upon the party who has signed the counterparty and when taken together, shall constitute an original fully executed and binding agreement between the Parties.

168483.00001/155976591v.3

13. This Stipulation sets forth the complete agreement of the parties and may not be modified, waived or changed, except by a writing signed by the parties to be bound thereby.

**IT IS SO STIPULATED**.

Dated this 13th day of January, 2026.

| | |
|---|---|
| GARMAN TURNER GORDON LLP | SCHWARTZ LAW, PLLC |
| By: /s/  Teresa Pilatowicz<br>    GREGORY E. GARMAN, ESQ.<br>    TERESA M. PILATOWICZ, ESQ.<br>    MARY LANGSNER, Ph.D.<br>    7251 Amigo Street, Suite 210<br>    Las Vegas, Nevada 89119<br>    *Counsel to the Debtors* | By: /s/   Gabrielle A. Hamm<br>    SAMUEL A. SCHWARTZ, ESQ.<br>    Nevada Bar No. 10985<br>    GABRIELLE A. HAMM, ESQ.<br>    Nevada Bar No. 11588<br>    601 East Bridger Avenue<br>    Las Vegas, Nevada 89101<br><br>    and<br><br>    BLANK ROME LLP<br>    Kenneth J. Ottaviano (admitted *pro hac vice*)<br>    William J. Dorsey (admitted *pro hac vice*)<br>    Stephanie K. Hor-Chen (admitted *pro hac vice*)<br>    444 West Lake Street, Suite 1650<br>    Chicago, IL 60606<br><br>    *Counsel for Aequum Capital Financial II LLC* |

168483.00001/155976591v.3