Ogonna Brown, Bar No. 7589
Ogonna.Brown@wbd-us.com
WOMBLE BOND DICKINSON (US) LLP
8488 Rozita Lee Avenue, Suite 400
Las Vegas, NV 89113
Tel:    702.949.8200

Michael W. O'Donnell (admitted *pro hac vice*)
Aimee Vidaurri (admitted *pro hac vice*)
**NORTON ROSE FULBRIGHT US LLP**
111 W. Houston Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 224-5575
Facsimile: (210) 270-7205
Email: mike.odonnell@nortonrosefulbright.com
Email: aimee.vidaurri@nortonrosefulbright.com

Julie Harrison (admitted *pro hac vice*)
**NORTON ROSE FULBRIGHT US LLP**
1550 Lamar St., Suite 2000
Houston, TX 77010
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
Email: julie.harrison@nortonrosefulbright.com

*Attorneys for Creditors AICV S Heart Fillmore, L.L.C.,
AICV S Heart Workman, L.L.C., NL Ventures XII
Zarzamora, L.L.C., NL Ventures XII Delaware, L.L.C.
and NL Ventures XII Morton, L.L.C.*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| In re: | Lead Case No. 25-16697-nmc |
|---|---|
| LAS VEGAS COLOR GRAPHICS, INC., | Chapter 11 |
| ☐ AFFECTS LAS VEGAS COLOR GRAPHICS, INC. | *Jointly Administered with:* ColorArt, LLC |
| ☒ AFFECTS COLORART, LLC | Case No. 25-16701-nmc |
| ☐ AFFECTS BOTH DEBTORS | **DECLARATION OF MICHAEL J. BAUCUS IN SUPPORT OF OBJECTION TO DEBTORS' AMENDED OMNIBUS MOTION FOR ORDER AUTHORIZING DEBTORS TO REJECT NON-RESIDENTIAL REAL PROPERTY LEASES, NUNC PRO TUNC, AND ABANDON ANY REMAINING TANGIBLE PERSONAL PROPERTY** |
| Debtors. | Hearing Date:    January 27, 2026 |
|  | Hearing Time:    9:30 a.m. |

4911-0123-6360.1

I, Michael J. Baucus, declare under penalty of perjury under the laws of the United States as follows:

1. My name is Michael J. Baucus. I am over eighteen years of age and of sound mind. I submit this declaration in support of the *Objection to Debtors' Amended Omnibus Motion for Order Authorizing Debtors to Reject Nonresidential Real Property Leases, Nunc Pro Tunc, and Abandon any Remaining Tangible Personal Property* (the "Objection"). I am employed by AIC Ventures L.P., an affiliate of NL Ventures XII Morton, L.L.C., (together with their affiliates, "AIC") as Managing Director, Portfolio Operations. I have personal knowledge of the matters set forth herein as a result of my employment with AIC, information provided to me and my review of relevant documents, and my interaction with representatives of the Debtors as set forth herein. The following testimony is based upon my personal knowledge of the facts and such facts are true and correct.

2. AIC is a private real estate investment firm, specializing in the acquisition of industrial sale-leasebacks and net-leased real estate throughout the U.S.

3. A sale leaseback transaction involves the sale of real property by the seller-lessee and a simultaneous, long-term, absolute net leaseback of the same property for a substantial portion of the remainder of the property's economic life.

4. In early 2022, AIC became aware of an opportunity to acquire certain property through a series of sale leaseback transactions with debtor ColorArt, LLC ("ColorArt") and JAL Equity Corp. ("JAL").

5. I understand that JAL is the sole member of ColorArt. I further understand that Eran Salu is the founder and president of JAL. I believe that JAL's business plan has been to acquire controlling interests in printing businesses that own the industrial facilities from which they operate and to finance those acquisitions, in part, through sale leaseback transactions rather than traditional equity-intensive financing.

6. Specifically with respect to the Objection, AIC, ColorArt, and JAL discussed a purchase and leaseback (the "Sale Leaseback Transaction") of certain facilities of American Spirit Graphics ("ASG"), who operated a response-oriented direct main communications business

focused on printing, direct mail, and inline finishing from two facilities located at 2525 Delaware Ave. (the "Delaware Property") and 2701 Delaware Ave. (the "Morton Property" and together with the Delaware property, the "Property"). The two facilities are neighboring buildings, less than 0.1 miles apart, which were operated as a single business unit. Attached hereto as **Exhibit "E"** is a true and correct copy of a Google Map image showing the two locations, which fairly and accurately depicts the locations as of the date the image was captured.

7. On May 13, 2022, after numerous discussions among AIC and JAL, AIC sent JAL a commitment letter regarding the "Purchase and leaseback of the American Spirit facilities located in Des Moines, IA" (the "Commitment Letter"). A true and correct copy of the Commitment Letter is attached hereto as **Exhibit "B."**

8. The Commitment Letter memorialized the parties' nonbinding understandings and binding agreements regarding the acquisition and leaseback of the Property for a purchase price of $7.2 million, with ColorArt as the seller/tenant and JAL as guarantor, and an initial annual rent of $468,000, subject to a 2.5% annual increase. Mr. Salu, on behalf of JAL, executed the Commitment Letter on May 13, 2022.

9. I understand that, through the Sale Leaseback Transaction, ColorArt acquired ASG's business and its facilities at the Property to further develop ColorArt's promotional/gifting, commercial printing, sign manufacturing, direct mail, and screen-printing capabilities. I believe that the party's intentions in consummating the Sale Leaseback Transaction was to allow ColorArt to operate both facilities as part of a singular business operation.

10. On July 26, 2022, AIC, JAL, and ColorArt closed the Sale Leaseback Transaction for the Property.

11. In connection with the closing, AIC formed two holding companies, NL Ventures XII Morton, L.L.C. and NL Ventures XII Delaware, L.L.C., to acquire legal title to the Property and to serve as lessors under long-term leases to ColorArt (together with any amendments, supplements, or modifications, the "Leases"). True and correct copies of the Leases are attached hereto as **Exhibit "A."**

4911-0123-6360, v. 1

12. Over the 20-year terms of the Leases, ColorArt agreed to pay AIC more than $17.1 million in Basic Rent, in addition to all obligations typical of an absolute net lease, including payment of taxes, insurance, maintenance, and repairs (collectively, "Additional Rent"). Under the Leases, Basic Rent is due and payable in equal monthly installments, in advance, on the first day of each month.

13. The Leases are absolute net leases that require ColorArt, among other things, to: (i) pay all Basic Rent and Additional Rent; (ii) maintain and insure the Property; (iii) keep the Property free of liens; and (iv) provide periodic financial reporting to AIC, including quarterly financial statements and certificates of compliance with loan covenants, upon AIC's request.

14. Under the Leases, the failure to timely pay Basic Rent or Additional Rent, the failure to timely provide required financial statements, the failure to maintain and insure the Property, the failure to keep the Property free of liens, and the abandonment of the Property for thirty (30) consecutive days each constitute an "Event of Default."

15. The Leases also contain cross-default provisions such that an Event of Default under the Lease for the Morton Property constitutes a default under the Lease for the Delaware Property, and vice versa.

16. In addition, the Leases provide that if three Events of Default occur within a twelve (12) month period, ColorArt's rights to notice and opportunity to cure are waived and AIC may immediately exercise all remedies available under the Leases or applicable law.

17. Prior to its bankruptcy filing, ColorArt failed to timely pay Basic Rent and Additional Rent on multiple occasions, failed to provide required financial disclosures when due, and otherwise failed to comply with terms of the Leases, resulting in numerous Events of Default.

18. I understand that AIC issued multiple notices of default and demand letters identifying Events of Default, including rent defaults, abandonment defaults, insurance defaults, cross-defaults, and financial disclosure defaults. True and correct copies of the AIC's demand letters are attached hereto as **Exhibit "C."**

19. I understand that during periods when ColorArt did remit payments in 2025, it routinely made a single monthly payment covering both Leases for the Property, rather than

separate payments for each Lease. A true and correct copy of AIC's receivable detail regarding the Property reflecting such payments is attached hereto as **Exhibit "D."**

20. As reflected in AIC's records, payments covering the Property have been variously described as "Rent American Spirit," "Rent-Delaware/Morton," or "ASG Des Moines."

21. As evidenced by the Commitment Letter, the Leases, the single purchase price, unitary rent structure, cross-default provisions, and AIC's course of dealing with ColorArt and JAL, I believe that the parties intended that the Leases be integrated components of a single, unified Sale Leaseback Transaction for the Property.

22. To this end, the parties executed simultaneous amendments to both Leases effective May 21, 2025, which extended the terms of both Leases, amended the Basic Rent paid by ColorArt, and made other modifications as set forth in the amendments. A true and correct copy of the amendments are attached hereto as **Exhibit "F."**

23. The parties also twice entered identical side letters for each Lease first on July 26, 2022 and then on September 19, 2023. A true and correct copy of the letters are attached hereto as **Exhibit "G."**

24. Since its bankruptcy filing, ColorArt has not paid rent due under the Morton Lease. Rent for December 2025 and January 2026 for the Morton Lease are currently due and owing.

25. ColorArt has not turned over the keys to AIC or taken other actions to abandon possession of the Morton Property.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated January 12, 2026.

/s/ 
Michael J. Baucus
Managing Director, Portfolio Operations

4911-0123-6360, v. 1

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Womble Bond Dickinson (US) LLP, and that on the 13th day of January, 2026, I caused to be served a true and correct copy of **DECLARATION OF MICHAEL J. BAUCUS IN SUPPORT OF OBJECTION TO DEBTORS' AMENDED OMNIBUS MOTION FOR ORDER AUTHORIZING DEBTORS TO REJECT NON-RESIDENTIAL REAL PROPERTY LEASES, NUNC PRO TUNC, AND ABANDON ANY REMAINING TANGIBLE PERSONAL PROPERTY** in the following manner:

☒ (ELECTRONIC SERVICE) Under Administrative Order 02-1 (Rev. 8-31-04) of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

☐ (UNITED STATES MAIL) By depositing a copy of the above-referenced document (without exhibits, but exhibits are available upon request to Ogonna.Brown@wbd-us.com, Caitlin.Halm@wbd-us.com, or Renee.Creswell@wbd-us.com) for mailing in the United States Mail, first class postage prepaid, at Las Vegas, Nevada, to the parties listed on the attached service list, at their last known mailing addresses, on the date above written.

☐ (OVERNIGHT COURIER) By depositing a true and correct copy of the above-referenced document for overnight delivery via Federal Express, at a collection facility maintained for such purpose, addressed to the parties on the attached service list, at their last known delivery address, on the date above written.

☐ (FACSIMILE) That I served a true and correct copy of the above-referenced document via facsimile, to the facsimile numbers indicated, to those persons listed on the attached service list, on the date above written.

                                                         */s/ Renee L. Creswell*
                                                        An employee of Womble Bond Dickinson (US) LLP

4911-0123-6360, v. 1