GARMAN TURNER GORDON LLP
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: ggarman@gtg.legal
TERESA M. PILATOWICZ, ESQ.
Nevada Bar No. 9605
E-mail: tpilatowicz@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
E-mail: mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: (725) 777-3000
[Proposed] *Counsel to the Debtors*

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF NEVADA

| In re: | Lead Case No.:25-16697-nmc |
|---|---|
| LAS VEGAS COLOR GRAPHICS, INC., | Chapter 11 |
| ☐ AFFECTS LAS VEGAS COLOR GRAPHICS, INC. | *Jointly administered with:* |
| ☐ AFFECTS COLORART, LLC | ColorArt, LLC<br>Case No. 25-16701-nmc |
| ☒ AFFECTS BOTH DEBTORS<br><br>Debtors. | <u>Interim Hearing Date:</u><br>Hearing Date: January 13, 2026<br>Hearing Time: 9:30 a.m.<br><br><u>Hearing:</u><br>Hearing Date: January 20, 2026<br>Hearing Time: 9:30 a.m. |

**NOTICE OF ENTRY OF ORDER ON STIPULATION FOR CONTINUED INTERIM USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. §§ 105, 361, 363, AND 506, AND FED. R. BANKR. P. 4001(b) AND SCHEDULING A FINAL HEARING**

PLEASE TAKE NOTICE that an *Order on Stipulation for Continued Interim Use of Cash Collateral Pursuant to 11 U.S.C. §§ 105, 361, 363, and 506, and Fed. R. Bankr. P. 4001(b) and Scheduling a Final Hearing* [ECF No. 270], a copy of which is attached hereto, was entered in the above-entitled matter on January 15, 2026.

Dated this 16th day of January, 2025.

GARMAN TURNER GORDON LLP

By: <u>/s/ Teresa Pilatowicz</u>
GREGORY E. GARMAN, ESQ.
TERESA M. PILATOWICZ, ESQ.
MARY LANGSNER, PH.D.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
[Proposed] *Attorneys for Debtors*

_____
Honorable Natalie M. Cox
United States Bankruptcy Judge

Entered on Docket
January 15, 2026

---

GARMAN TURNER GORDON LLP
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: ggarman@gtg.legal
TERESA M. PILATOWICZ, ESQ.
Nevada Bar No. 9605
E-mail: tpilatowicz@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
E-mail: mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: (725) 777-3000
[Proposed] *Counsel to the Debtors*

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF NEVADA**

| In re: | Lead Case No.:25-16697-nmc |
|---|---|
| LAS VEGAS COLOR GRAPHICS, INC., | Chapter 11 |
| ☐ AFFECTS LAS VEGAS COLOR GRAPHICS, INC. | *Jointly administered with:* |
| ☐ AFFECTS COLORART, LLC | ColorArt, LLC<br>Case No. 25-16701-nmc |
| ☒ AFFECTS BOTH DEBTORS | <u>Interim Hearing Date:</u><br>Hearing Date: January 13, 2026<br>Hearing Time: 9:30 a.m. |
| Debtors. | <u>Hearing:</u><br>Hearing Date: January 20, 2026<br>Hearing Time:  930 a.m. |

**ORDER ON STIPULATION FOR CONTINUED INTERIM USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. §§ 105, 361, 363, AND 506, AND FED. R. BANKR. P. 4001(b) AND SCHEDULING A FINAL HEARING**

1 Debtors and debtors-in-possession Las Vegas Color Graphics, Inc. ("LVCG") and ColorArt, LLC ("ColorArt"; together with LVCG, the "Debtors"), by and through counsel of record, the law firm Garman Turner Gordon LLP, and Aequum Capital Financial II LLC ("**Lender**," and collectively with the Debtors, the "**Parties**"), by and through its counsel of record Blank Rome LLP and Schwartz, PLLC having filed their *Stipulation for Continued Interim Use of Cash Collateral Pursuant to 11 U.S.C. §§ 105, 361, 363, and 506 and Fed. R. Bankr. P. 4001(b), and Scheduling a Final Hearing* [ECF No. 260] ("**Cash Collateral Stipulation**"), the Court having entered the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 363, and 506, and Fed. R. Bankr. P. 4001(B) For Entry of Interim and Final Orders Authorizing the Use of Cash Collateral, and Scheduling a Final Hearing* [ECF No. 99 in 25-16697; ECF No. 100 in 25-16701] (the "**Initial Interim Order**"),[1]

Upon considering all the pleadings filed with this Court, and the Court having found and determined that, subject to the terms of this order ("**Stipulated Order**"), the relief agreed to in the Cash Collateral Stipulation is in the best interests of Debtors, their estates, creditors, and all parties in interest; and after due deliberation and consideration and good and sufficient cause appearing therefor,

**THE COURT FINDS AND CONCLUDES:**

A. On November 5, 2025 ("**Petition Date**"), Debtors filed a voluntary petition for relief under Chapter[2] 11, thereby commencing the above-captioned Chapter 11 case ("**Chapter 11 Case**") before the United States Bankruptcy Court for the District of Nevada ("**Bankruptcy Court**").

B. Debtors have continued in the possession of their property and operating and managing their business as debtor and debtor-in-possession pursuant to Sections 1107(a) and 1108.

---

[1] Unless otherwise noted, all capitalized terms used in this Interim Order will have the meanings ascribed to them in the Cash Collateral Stipulation.

[2] Unless otherwise stated, all "**Chapter**" and "**Section**" references are to title 11 of the U.S. Code ("**Bankruptcy Code**"), all references to a "**Bankruptcy Rule**" are to the Federal Rules of Bankruptcy Procedure, and all references to "**Local Rule**" are to the Local Rules of Bankruptcy Practice for the U.S. District Court for the District of Nevada.

C.  The statutory predicates for the relief sought herein are Sections 361 and 363, Bankruptcy Rule 4001(b), and Local Rule 4001.

D.  No trustee or examiner has been appointed and no creditors' committee has yet been appointed in the Chapter 11 Case.

E.  This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (D) and (O). Venue of these proceedings is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

F.  Notice of the Cash Collateral Motion has been provided to all parties entitled thereto and such notice was appropriate under the circumstances, and no other or further notice of the Cash Collateral Motion is or shall be required.

**IT IS HEREBY ORDERED AND ADJUDGED THAT:**

1.  The Stipulation is approved in its entirety

2.  Debtors may use Cash Collateral through the earlier of February 27, 2026 or the Final Cash Collateral Hearing in order for Debtors to pay expenses and costs in accordance with the Budget, subject to a 15% variance for each line item and 10% in the aggregate (defined as a "**Material Variance**") for the preceding one-week period. The Budget may be updated or modified from time to time with Lender's prior written consent. Any Material Variances from the Budget require Lender's prior written consent, absent which no over-budget disbursements may be made. Except with Lender's written consent, there shall be: (i) no intercompany transfers from the Debtors, (ii) no sweeps or setoffs involving affiliates, and (iii) no cross-collateralization among the Debtors and any affiliates.

3.  As adequate protection for any diminution in value of Lender's interest in the Prepetition Collateral (including Cash Collateral) during the Interim Period resulting from Debtors' use of Cash Collateral, Lender is granted the following (collectively, the "**Adequate Protection**"), only to the extent of diminution of value in the Cash Collateral:

    a.  *Replacement Liens*. Pursuant to sections 361 and 363 of the Bankruptcy Code, continuing, valid, binding, automatically perfected, and enforceable postpetition

      security interests in and liens (the "**Replacement Liens**") on all of the Debtors' right, title and interest in and to all postpetition cash, accounts receivable, inventory and identifiable proceeds and products of the Prepetition Collateral (the "**Postpetition Collatera**l"), in each case to the same extent, validity and priority that existed as of the Petition Date with respect to the Prepetition Collateral, subject only to (i) the Carve-Out (as defined below) and (ii) any valid, perfected and unavoidable liens that were senior to Lender's liens as of the Petition Date.

  b. *Exclusions from Replacement Liens*. The Replacement Liens shall not attach to (i) any causes of action arising under sections 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or similar state law claims (collectively, the "**Avoidance Actions**") or (ii) the proceeds thereof

  c. *Adequate Protection Superpriority Claim*. Lender shall be granted, as further adequate protection, an allowed superpriority administrative expense claim in each of the Chapter 11 Cases under section 507(b) of the Bankruptcy Code (the "**Adequate Protection Claim**") with priority over any and all other administrative expenses, administrative expense claims, and unsecured claims against the Debtors or their Estates, now existing or hereafter arising, of any kind or nature whatsoever as to and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, subject only to the Carve-Out.

  d. As used in this Interim Order, the "Carve-Out" means an amount equal to the sum of: (1) statutory fees payable to the United States Trustee, (2) fees payable to the clerk of the Bankruptcy Court, (3) unpaid, payable pursuant to any interim compensation procedures approved by the Court, and/or allowed fees and expense of the CRO up to the amount provided in the Budget for the CRO, and (4) unpaid, payable pursuant to any interim compensation procedures approved by the Court, and/or fees and expenses of the Debtors' retained professionals (a) incurred on or prior to the date on which the Carve-Out Trigger Notice (as defined below) is delivered, through the Interim Period up to the amount provided in the Budget for

professional fees and any amounts after the Interim Period as determined by the Parties, which amounts shall be segregated in a separate account (the "**Segregated Account**") on a weekly basis and (b) incurred after the first business day following the date on which the Carve-Out Trigger Notice, subject to a cap of $25,000. "**Carve-Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by Aequum to the Debtors' counsel and the United States Trustee following the occurrence and during the continuation of an event of default under this Stipulation that has not been cured.

e. *Periodic Payments*. During the Interim Period, Debtors shall pay to Lender, as additional Adequate Protection, (1) monthly cash payments of interest at the non-default contract rate, in accordance with the Loan Documents, and (2) to the extent Lender is oversecured, the reasonable and documented fees, costs, and expenses of Lender's legal counsel reasonably incurred in connection with the Debtors' cases and the protection of Lender's interests, together with reasonable and documented costs of appraisals and collateral examinations as described herein. Such fees, costs, and expenses shall be subject to review by the United States Trustee and/or the Bankruptcy Court; provided, however, that invoices of Lender's professionals may be summary and redacted invoices providing only the total aggregate number of hours billed and a summary description of services provided and expenses incurred by the applicable professional, and shall be subject to all applicable privilege and work product doctrines.

f. Debtors shall provide Lender with timely, detailed, and accurate financial reporting regarding their operations, cash flows, and compliance with the Budget, including explanations for any Material Variances. Unless otherwise agreed, such reporting shall include (i) weekly cash reports delivered within three (3) days after week-end; and (ii) weekly budget-to-actual variance reports delivered within three (3) business days after the end of each week. Lender may request reasonable supplemental reporting, which the Debtors shall provide promptly.

5

      g. Upon twenty-four hours' written notice by Lender to Debtors and their counsel, Debtors shall permit Lender or its agents, reasonable access, during normal business hours, to conduct field examinations and inspect inventory and other collateral at the Debtors' premises.

4. Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral, as applicable; provided, however, that subject to entry of the Final Order, other secured creditors' rights, if any, this paragraph 4 shall not impair the rights, if any, of other secured creditors to assert such doctrines solely as between such creditors and Lender.

5. Subject to the entry of the Final Order, Lender shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code and the "equities of the case" exception shall not apply to Lender.

6. Upon any asserted default under this Interim Order, Lender shall provide written notice (a "**Default Notice**") to the Debtors, their counsel, and counsel to any Committee (if appointed), describing the alleged default in reasonable detail. The Debtors shall have three (3) business days following receipt of the Default Notice (the "**Cure Period**") to cure the alleged default or dispute its existence. If the default is not cured or resolved within the Cure Period, Lender may seek expedited relief from the automatic stay and/or termination of the Debtors' use of Cash Collateral upon not less than three (3) business days' notice (or such shorter notice as the Bankruptcy Court may allow).

7. The Debtors' execution of the Stipulation and agreement with regard to the consensual use of Cash Collateral during the Interim Period will be without prejudice to Debtors' right to seek further use of Cash Collateral consistent with Section 363 of the Bankruptcy Code solely in the event the Debtors do not obtain entry of a consensual final order on Cash Collateral Use; provided, however, that nothing provided herein shall be deemed or construed as (a) Lender's consent to any such use, (b) an admission that the Debtors are entitled to use Cash Collateral absent Lender's consent, or (c) a waiver or limitation of any rights, remedies, objections, or defenses of Lender with respect to any such request for use of Cash Collateral.

8. The Debtors, through the CRO, shall use commercially reasonable efforts to seek to obtain debtor-in-possession financing for a partial pay-down of Lender's claim, on terms acceptable to Lender, and seek a restructuring, sale, refinancing, or other value-maximizing transaction or series of transactions that would result in a repayment or refinancing of Lender's claims on terms approved by the Bankruptcy Court. The Parties may agree, in connection with the Final Order or separate stipulation, on reasonable case milestones, subject to extension by agreement of the Parties or by the Bankruptcy Court for cause.

9. The Debtors' principal, Eran Salu ("**Salu**"), shall execute and deliver to Lender, a forward-looking validity guaranty (the "**Validity Guaranty**"), in form and substance acceptable to Lender and Salu, which shall provide, among other things, that Salu agrees to save Lender harmless and indemnify Lender from and against all loss, damage or injury which Lender may in any manner sustain in whole or in part by reason of any fraud, deceit or criminal act committed by Salu or by any employee of the Debtors at the direction of Salu, or by Lender's reliance on any intentionally and materially false, erroneous, misleading, inaccurate, incorrect or incomplete information furnished by Salu or by any employee of the Debtors at the direction of the Salu.

10. The Final Cash Collateral Hearing is scheduled for January 20, 2026.

11. This Court hereby retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Interim Order.

**IT IS SO ORDERED.**


Prepared and submitted by:

GARMAN TURNER GORDON LLP


By: /s/     Teresa Pilatowicz
    GREGORY E. GARMAN, ESQ.
    TERESA M. PILATOWICZ, ESQ.
    MARY LANGSNER, Ph.D.
    7251 Amigo Street, Suite 210
    Las Vegas, Nevada 89119
    [Proposed] Counsel to the Debtors