YES GARMAN TURNER GORDON LLP
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: ggarman@gtg.legal
TERESA M. PILATOWICZ, ESQ.
Nevada Bar No. 9605
E-mail: tpilatowicz@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
E-mail: mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: (725) 777-3000
*Counsel to the Debtors*

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Lead Case No.:25-16697-nmc |
| LAS VEGAS COLOR GRAPHICS, INC., | Chapter 11 |
| ☐ AFFECTS LAS VEGAS COLOR GRAPHICS, INC. | *Jointly administered with:* |
| ☐ AFFECTS COLORART, LLC | ColorArt, LLC<br>Case No. 25-16701-nmc |
| ☒ AFFECTS BOTH DEBTORS | Hearing Date: January 27, 2026<br>Hearing Time: 9:30 am |
| Debtors. | |

## REPLY TO THE U.S. TRUSTEE'S OBJECTION AND RESERVATION OF RIGHTS TO THE MOTION FOR ADMINISTRATIVE ORDER ESTABLISHING PROCEDURES FOR INTERIM COMPENSATION OF ESTATE PROFESSIONALS

Las Vegas Color Graphics, Inc. and ColorArt, LLC (collectively, the "Debtors") hereby respectfully submit this reply ("Reply") to the *U.S. Trustee's Objection and Reservation of Rights to the Motion for Administrative Order Establishing Procedures for Interim Compensation of Estate Professionals* [ECF No. 262] (the "UST Objection") and in support of the relief requested in the *Motion for Administrative Order Establishing Procedures for Interim Compensation of Estate Professionals* [ECF No. 237] (the "Motion"). This Reply is supported by the declaration of Teresa Pilatowicz (the "Pilatowicz Declaration") [ECF No. 238], which was submitted in

support of the Motion, as well as the supplemental declaration of Teresa Pilatowicz (the "Supplemental Pilatowicz Declaration") and the declaration of the Chief Restructuring Officer, Michael Silverman (the "Silverman Declaration"), filed herewith, as well as the papers and pleadings on file herein, judicial notice of which is respectfully requested, and any argument of counsel entertained by the Court at the time of the hearing of the Motion.

## I. INTRODUCTORY STATEMENT

The US Trustee ("UST") asserts Debtors have failed to establish that the proposed interim compensation procedure satisfies the standard in this circuit for deviating from the default payment period of 120 days set forth in 11 U.S.C. § 331. In particular, the UST argues the Debtors have failed to establish as a factual predicate that (1) these cases will see an unusually large amount of fees accrue on a monthly basis; or (2) being compensated pursuant to the default rule in Section 331 will place an undue burden on professionals. While the Debtors submit that the Motion is sufficient on its face, they nevertheless include herewith supplemental information for the Court's consideration.

As set forth in the Motion, interim compensation procedures like the ones proposed here have routinely been granted by this Court for more than a decade. *See, e.g., In re Front Sight Management, LLC*, Case No. 22-11824-ABL (Bankr. D. Nev. 2022); *In re Jagged Peak, Inc.*, Case No. 19-15959 (Bankr. D. Nev. 2019); *In re Post 135 Holdings, LLC*, Case No. 18-14683-MKN (Bankr. D. Nev. 2018); *In re Turnberry/MGM Grand Towers, LLC*, Case No. 15-13706 (Bankr. D. Nev. 2015); *In re Lake at Las Vegas Joint Venture, LLC*, Case No. 08-17814 (Bankr. D. Nev. 2008); *In re USA Commercial Mortgage Company*, Case No. 06-10725 (Bankr. D. Nev. 2006); *In re Hawaiian Airlines, Inc.*, Case No. 03-00817 (Bankr. D. Nev. 2006); *In re Station Casinos, Inc.*, Case No. 09-52477 (Bankr. D. Nev. 2009); *In re Shengdatech, Inc.*, Case No. 11-52649 (Bankr. D. Nev. 2011); *In re Zante, Inc., et al.*, Case No. 09-50746-GWZ; *In re HMA Sales*, 07-12694-LBR, ECF No. 130 (Bankr. D. Nev. 2007); *In re Tree Moss Partners, LLC*, 06-13758-LBR, ECF No. 242 (Bankr. D. Nev. 2006).

Nonetheless, the UST insists that Debtors have not met their burden under *Knudsen* to depart from the 120-day period. The *Knudsen* factors are not ends unto themselves, but rather

factors to inform a bankruptcy court's determination of whether the case before it merits departing from the 120-day period for filing applications for compensation and reimbursement and authorizing payment prior to final approval of compensation following notice and a hearing. *See In re Knudsen Corp.*, 84 B.R. 668 (B.A.P. 9th Cir. 1988). Nothing in the decision suggests that the *Knudsen* court intended to create a rigid dichotomy of large and small cases, or to deprive the bankruptcy court of discretion to invoke the express terms of Section 331 by permitting more frequent payment of compensation to professionals in appropriate cases.[1]

Courts have recognized that *Knudsen* does not impose a rigid standard but sets forth factors that may be more or less relevant in a given case. *See In re Golden Fleece Bevs., Inc.*, No. 21 B 12228, 2021 Bankr. LEXIS 3519, at *14-15 (Bankr. N.D. Ill. Nov. 24, 2021) (stating that "[t]he Knudsen factors may be more or less important, and there may be other relevant factors, depending on the circumstances of the case."); *In re Mariner Post-Acute Network, Inc.*, 257 B.R. 723, 731 (Bankr. D. Del. 2000) (other factors may include whether debtors would prefer monthly rather than quarterly payments, the effect of the proposal on the court's ability to adequately review fee applications, the economic impact of the payment arrangement on the debtor, the debtor's ability to reorganize, and the reputation of proposed counsel).

In *In re Commercial Consortium of California*, the Honorable Judge Fenning explained that Section 331 of the Bankruptcy Code is based on the principle that "[p]rofessionals in bankruptcy cases are entitled to be paid on a comparable basis to other privately retained counsel, both in terms of timeliness and amount of payment." 135 B.R. 120, 123 (Bankr. C.D. Cal. 1991) (citing *In re Manoa Finance Co., Inc.*, 853 F. 2d 687, 690 (9th Cir. 1988)). Commenting on Section 331, she explained "[t]he essential purpose of this section is to relieve counsel and other

---

[1] The *Knudsen* court noted that even the fee application procedure and the requirement of a notice and hearing "are not policies in themselves; they are a method of implementing the Code's policy of having the bankruptcy court scrutinize attorneys' fees in order to avoid overreaching and waste of estate assets." *In re Knudsen*, 84 B.R. at 672 (citing *In re Nucorp Energy*, 764 F.2d 655, 658 (9th Cir. 1985) ("The detailed fee applications enable the bankruptcy court to fulfill its obligation to examine carefully the requested compensation in order to ensure that the claimed expenses are justified.")). The critical factor, according to *Knudsen*, is that "the fees must not be finally allowed (i.e., they must be subject to repayment) until a detailed application is filed, an opportunity for objection has been provided, and the court has reviewed the application." *Id.* at 671.

professionals of the burden of financing lengthy bankruptcy proceedings." *Commercial Consortium*, 135 B.R. at 123.

As Judge Fenning also noted, payments once every 120 days are *no longer sufficient* to keep bankruptcy counsel on par with non-bankruptcy lawyers:

> In 1978, when the Code was enacted, attorneys customarily billed their clients on a quarterly basis. Times have changed. Lawyers now run their practices in a more business-like fashion. Computerization has simplified and speeded the billing process. As widely documented in the legal press, the billing cycle has shifted to monthly statements. The 120-day provision of Section 331, intended to be a help to lawyers in 1978, has become a straight-jacket for the lawyers of the '90s. Thus, even payments every 120 days no longer compensate bankruptcy attorneys on a fully equivalent basis with their nonbankruptcy colleagues.

*Id.* at 123-24; *see also In re ACT Mfg.*, 281 B.R. 468, 475-76 (Bankr. D. Mass. 2002) (while the normal practice under Section 331 effectively requires counsel to defer payment for close to six months, "[d]elays of that magnitude are not consistent with normal commercial practices and can have a significant chilling effect on the ability of the Debtor and the Committees to retain counsel and services of a level needed in order to effectively administer the case." (citations omitted)).

Even the U.S. Trustee Program Manual and Policies (the "UST Manual"), Volume 3, *Chapter 11 Case Administration*, 3-8.3 "Interim Compensation," notes 11 U.S.C. § 331 "reflects Congressional acknowledgment that bankruptcy professionals should not be in the position of financing the reorganization effort by being required to defer payment of their fees." UST Manual § 3-8.3 (issued February 18, 2025) (citing *In re UNR Indus., Inc.*, 30 B.R. 613, 617 (Bankr. N.D. Ill. 1983)).

Contrary to the UST Objection, the UST Manual states, "Professionals engaged in a large reorganization will generally seek at an early stage of the case court approval for interim payment procedures at intervals more frequent that once every 120 days." *Id.* There is no emphasis that the Chapter 11 case must be *unusually* large and even suggests interim compensation procedures have become the general norm. Moreover:

> In an instance where substantial professional time is devoted to a case on a monthly basis, it is consistent with the purpose and intent of section 331 for the United States Trustee to participate in the negotiation of an appropriate fee review procedure order. Any such order should provide for a United States Trustee review of invoices

prior to payment and preserve the right of objection at all stages of the procedure. Formal court approval should be provided for at regular periodic intervals after notice and a hearing. Holdbacks on fees should be provided for in an appropriate case.

*Id.*

Further, in this case, at the hearing on the motion to appoint the CRO, the parties discussed that the J. Alix Protocol specifically contemplates allowing CROs to file a monthly report, with notice to the UST and relevant parties, detailing the services provided and itemized expenses incurred, among other information, consistent with the procedures proposed herein. *See* Clifford J. White III (FN1) *et. al.*, "Future of Ustp's Cro "Protocol", Am. Bankr. Inst. J., September 2018 (2018). Given the discussion, and the subsequent order from the Court, it was always contemplated that the interim compensation procedures would provide the guardrails for the procedure, and thus, payment for the CRO and his team consistent with the J. Alix protocols. In other words, the CRO was added to the interim compensation procedures in order to effectuate exactly what the J. Alix Protocol permits, and such a request should not now be used against the Debtors and the CRO.

Accordingly, it has become common, if not routine,[2] to permit the monthly payment of professional fees (and in this case, the CRO), even in mid-market Chapter 11 cases, subject to procedures comparable to those proposed by the Debtors here. *See, e.g., In re Front Sight Management, LLC*, Case No. 22-11824-ABL; *In re Alpha Guardian*, Case No. 20-11016-MKN, ECF No. 269; *In re Post 135 Holdings, LLC*, Case No. 18-14683-MKN, ECF No. 177. As a result, the Debtors submit that they are not required to show that the Chapter 11 Case is "unusually" large or that the Debtors' professionals will suffer any particularized hardship, but only that the professionals should be spared the burden of financing these cases.

Here, "substantial professional time is devoted to [these cases] on a monthly basis," UST Manual § 3-8.3, both because Debtors are operating businesses with time-sensitive concerns and

---

[2] Notably, the most recent case cited in the UST Objection is from 1996. The Chapter 11 Case Administration UST Manual was update in February 2025 and clearly recognizes that interim compensation procedures are now "generally" sought.

because these cases have been highly contentious. This is true regardless of whatever definition of "unusually large" the UST proposes. *See* Pilatowicz Decl. ¶ 3

Second, waiting an extended period for payment would in fact place an undue hardship on Debtors' professionals and the CRO. These cases have already proven to be contentious and have involved significant professional efforts. While Debtors are optimistic the parties can now proceed in a less contentious manner, there is no assurance that will be achieved. As such, the Debtors' professionals and the CRO have already expended substantial time on these cases and anticipate they will continue doing so. *See* Supp. Pilatowicz Decl. ¶ 4; Silverman Decl. ¶ 2. Deferring payment for close to six months (taking into account time to prepare and submit fee applications, give notices, and allow the court and creditors to have the opportunity to review the fee applications) would work undue hardship on Debtors' professionals and the CRO particularly when the UST Manual and J. Alix Protocol contemplate such relief. *See In re ACT Mfg.*, 281 B.R. at 475-76; Supp. Pilatowicz Decl. ¶ 5; Silverman Decl. ¶ 3. As it stands now, from the Petition Date through the end of December, GTG has incurred approximately $209,815 in fees, and Silverman Consulting, Inc. has incurred approximately $139,000 in fees. Supp. Pilatowicz Decl. ¶ 6; Silverman Decl. ¶ 4.

Third, the Debtors' professionals can respond to any reassessment, should that occur. *See* Supp. Pilatowicz Decl. ¶ 7; Silverman Decl. ¶ 5. Fourth, and finally, the proposed procedures provide ample notice, ability to object, and a noticed hearing prior to final approval of compensation. Accordingly, the Debtors have amply satisfied each of the *Knudson* factors and the Motion should be granted.

The Debtors submit that these are appropriate cases for interim compensation procedures for court-approved estate professionals on a monthly basis, on terms comparable to those procedures established in other Chapter 11 cases filed in this and other districts.

/ / /

/ / /

### VII. CONCLUSION

WHEREFORE, the Debtors respectfully request that the UST Objection be overruled and the Motion approved.

DATED this 20th day of January, 2026.

                                        GARMAN TURNER GORDON LLP

                                      By: */s/  Teresa Pilatowicz*
                                                GREGORY E. GARMAN, ESQ.
                                                TERESA M. PILATOWICZ, ESQ.
                                                7251 Amigo Street, Suite 210
                                                Las Vegas, Nevada 89119
                                                *Counsel to the Debtor*