GARMAN TURNER GORDON LLP
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: ggarman@gtg.legal
TERESA M. PILATOWICZ, ESQ.
Nevada Bar No. 9605
E-mail: tpilatowicz@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
E-mail: mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: (725) 777-3000
*Counsel to the Debtors*

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF NEVADA

| In re: | Lead Case No.: 25-16697-nmc |
|---|---|
| LAS VEGAS COLOR GRAPHICS, INC., | Chapter 11 |
| ☐ AFFECTS LAS VEGAS COLOR GRAPHICS, INC. | *Jointly administered with:* |
| ☒ AFFECTS COLORART, LLC | ColorArt, LLC<br>Case No.: 25-16701-nmc |
| ☐ AFFECTS BOTH DEBTORS | Hearing Date: January 27, 2026<br>Hearing Time: 9:30 a.m. |
| Debtors. | |

**REPLY IN SUPPORT OF AMENDED OMNIBUS MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO REJECT CERTAIN NONRESIDENTIAL REAL PROPERTY LEASES (AS RELEVANT HERE: THE MORTON LEASE)**

Debtor ColorArt, LLC ("Debtor") hereby respectfully submits this reply ("Reply") in further support of the *Amended Omnibus Motion for Entry of an Order Authorizing the Debtors to Reject Certain Nonresidential Real Property Leases* (the "Motion")[1][ECF No. 228], filed by Debtor and Las Vegas Color Graphics, Inc. ("LVCG," and together with Debtor, the "Debtors"), and in reply to the *Objection to Debtors' Amended Omnibus Motion for Order Authorizing Debtors to Reject Non-Residential Real Property Leases, Nunc Pro Tunc, and Abandon any Remaining Tangible Personal Property* (the "Objection") filed by AICV S Heart Fillmore, L.L.C., AICV S

---

[1] Capitalized terms not otherwise defined herein shall have those meanings ascribed to them in the Motion.

Heart Workman, L.L.C., NL Ventures XII (12) Zarzamora, L.L.C., NL Ventures XII (12) Delaware, L.L.C. and NL Ventures XII (12) Morton, L.L.C. (collectively, "AIC"). This Reply is made and based on the memorandum of points and authorities herein, the declaration of Eran Salu (the "Salu Decl."), filed concurrently herewith, and any argument the Court entertains at the time of the hearing on the Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

The Motion seeks authority under Section 365 of the Bankruptcy Code to reject one lease: the nonresidential real property lease for 2701 Delaware Ave., Des Moines, Iowa 50317 (the "Morton Lease" and the "Morton Property"). The Objection[2] contends, in substance, that the Morton Lease cannot be considered separate from a different lease for a different facility, 2525 Delaware Ave., Des Moines, Iowa (the "Delaware Lease" and the "Delaware Property"), and argues the Debtors must treat the Morton Lease and Delaware Lease as a single "indivisible" agreement and either assume both or reject both. The Objection asks the Court to treat two distinct lease agreements, each with its own landlord entity and its own separately identified premises, as if they were one "indivisible" lease. The documents themselves reflect that the Morton Lease and the Delaware Lease are separate contracts with separate "Premises," and that each lease references the other as a different agreement (including through cross-default provisions).

Debtor does not seek to assume or reject portions of a lease, or to retain benefits while shedding burdens. Debtor seeks to reject the Morton Lease in full because the Debtor vacated the Morton Property on or around January 31, 2025 and no longer requires it for operations. The Objection's "single transaction" narrative does not convert separate contracts into one contract. The record reflects: (a) separate landlords, (b) separate leases, and (c) separate parcels/premises. Because the Morton Lease is a standalone "unexpired lease" within the meaning of section 365,

---

[2] The Objection also makes certain assertions related to the sale leaseback transaction and seeks to characterize certain actions of JAL with respect thereto. While Debtors dispute the characterization, they are not relevant to the relief sought and therefore, not further addressed herein. However, Debtors' silence shall not be construed as having agreed with the characterizations and all rights with respect thereto are reserved.

the Court should overrule the Objection and grant the Motion as requested.

## II.    LEGAL ARGUMENT AND ANALYSIS

Section 365(a) of the Bankruptcy Code authorizes a debtor in possession, subject to Court approval, to assume or reject executory contracts and unexpired leases. 11 U.S.C. § 365. A debtor's decision to reject a lease is reviewed under the business judgment standard. Under that standard, the Court should approve rejection where the debtor demonstrates that rejection represents a reasonable exercise of business judgment.

**A.    The Morton Lease and Delaware Lease Are Separate Leases, With Separate Landlords, for Separate Premises and the Morton Lease May Be Independently Rejected Under Section 365.**

The Objection's premise—that the Debtors are attempting to reject only part of a larger agreement—is incorrect. Even AIC's three cases on which it relies confirm that.

In *In re Braniff*, 118 B.R. 819, 845 (Bankr. M.S. Fla. 1989), the debtor (Braniff) and counterparties were disputing a transaction documented through multiple related instruments (including a lease commitment, a partial assignment, and a purchase agreement) covering aircraft financing/possession and related obligations. In that case, while the three agreements were executed contemporaneously between the same parties and were dependent on each other, Braniff sought to reject only the partial assignment. Of critical importance, the assignment agreement provided the right of the purchaser in the purchase agreement to purchase certain aircraft that it then agreed to lease to parties pursuant to the lease agreement. Given that there was no separation between the three agreements, and they each dealt with the same 26 aircraft and ultimately made performance under one agreement nearly impossible without the other, the Court determined they served as a unified contract.

In *In re Karfarkis*, 162 B.R. 719, 725 (Bank. E.D. Pa 1993), Dunkin' Donuts (as franchisor/landlord affiliate) sought relief from the automatic stay in a Chapter 11 case involving a Dunkin' Donuts store, arguing the debtors' franchise/lease rights had been terminated prepetition. The Bankruptcy Court performed an analysis to determine whether the franchise and lease agreements could exist independently, such that a termination of one would necessarily be a

termination of the other. The Court stated, "[t]he primary inquiry in resolving this question is whether the language employed in the contract clearly indicates the intention of the parties that the contract of the parties be entire or severable." *Id*. After analyzing the terms of the agreement, and the reference to the requirement to lease the property that Dunkin Donuts had leased from a third party as part of the franchise agreement, the Court determined that the lease agreement could not be logically separated from the franchise agreement and therefore, treated them as a unified agreement.

In *Equity Control Associates, Ltd. v Root*, 638 N.W.2d 664, 671 (Iowa 2001), a dispute arose over whether a brokerage agreement and compensation agreement for the loan brokered could be separated. There, the Iowa Supreme Court set forth the required analysis:

> "As a general rule, ... a contract constitutes a single agreement when, by its terms, nature, and purpose, it contemplates that each and all of its parts and the consideration stated shall be common each to the other and interdependent." In contrast, a divisible or separable contract "is one where the performance is divided into different groups, each set embracing performances which are the agreed exchange for each other."

Equity Control *Assocs*., 638 N.W.2d at 671 (internal citations omitted)

Here, under the test set forth in *Equity Control Associates,* the leases are clearly divisible or separable contracts: the performance is divided into different groups, with each lease embracing performances for separate properties. While AIC suggests that these cases stand for the proposition that "leases that form 'one unified contract…cannot be rejected,'"[3] notably absent from the caselaw cited is anything that states that two separate leases, with two separate landlords, for two separate properties, can be treated as a unified contract.

The Motion seeks rejection of the Morton Lease, its own legal contract. Debtor always understood that the intent was to treat the Morton Lease and the Delaware Lease as separate agreements. *See* Salu Decl. ¶ 3. This is clear from the structure of the lease transactions, which included (1) separate landlords, (2) separate properties, and (3) separate agreements. *See id*. ¶ 4.

///

---

[3] *See* Objection, p. 9, ll. 9-20.

**1.     Separate landlords (separate legal entities).**

AIC opted to title the properties in the names of two different entities. The Morton Lease is with one landlord entity, and the Delaware Lease is with a different landlord entity. The parties' deliberate use of separate landlord entities is consistent with separate ownership and separate leasing of separate properties. The Court should respect the form of the transaction that AIC and Debtor chose.

**2.     Separate premises (different addresses and different parcels).**

Each lease defines its own "Premises" by distinct address: Morton Lease, 2701 Delaware Ave and Delaware Lease, 2525 Delaware Ave. The Morton Lease also contains property-specific parcel identifiers and legal description tied to the Morton Property and the Delaware Lease contains property-specific parcel identifies and legal description tied to the Delaware Property. As reflected in Exhibit "E" to the Baucus Declaration [ECF No. 266], the properties are not even adjacent. Instead, there is an entirely different property owned by an unreleased party, Tomkins Industries, between the Morton Property and Delaware Property. Importantly, Debtor continues to utilize the Delaware Property and vacated, over a year ago, the Morton Property. This confirms the Morton Lease is not a lease of a combined, undivided "campus," but a lease of a discrete parcel/premises, and one property and lease is not dependent on the other.

**3.     Separate agreements (each lease references the other as a different lease).**

The leases' cross-default language (to the extent invoked by the Objection) does not merge the agreements; it underscores that there are two separate leases by expressly referring to the other agreement as "that certain Lease Agreement" for the other property. A cross-default provision is a contractual remedy/risk allocation term, not a consolidation clause. Because the Morton Lease is a standalone unexpired lease of nonresidential real property, it is independently subject to rejection under section 365.

**B.     The "Single Transaction" Story Does Not Rewrite the Separate Leases into One Lease.**

The Objection suggests that because a sale leaseback of the facilities may have been negotiated together, financed together, or otherwise integrated, the Court should treat the leases as

one. But commercial background and payment mechanics do not override the parties' executed agreements. If a multi-site tenant arrangement could be collapsed into one lease whenever (i) it was negotiated together, (ii) it supported a single business, or (iii) the tenant paid rent in a consolidated manner, then separate property-owning entities and separate leases would become meaningless in precisely the circumstances where parties most often use them. The bottom line here is that, if AIC wanted to avoid the ability to reject one contract without the other, it could have negotiated for that or made that clear in its documents. It did not do so and that is not what the documents reflect here. The Debtor is entitled to reject the Morton Lease based on the Morton Property's lack of continuing benefit to the estate.

C. **The Effective Date of the Rejection Should Be the Date the Motion was Filed.**

As set forth in the Motion, retroactive rejection may be permitted when the non-debtor party to the agreement was given definite notice of the intention to reject. *See In re Fleming Cos.*, 304 B.R. 85, 96 (Bankr. D. Del. 2003); *In re O'Neil Theaters, Inc.*, 257 B.R. 806, 807 (Bankr. E.D. La. 2000) (granting rejection retroactively to the petition date when the lease was clearly rejected pre-petition). "[C]ourts generally focus on whether the parties have facilitated or hindered the prompt return of the leased premises to the landlord when deciding whether to approve the rejection of a lease retroactive to an earlier date." *In re At Home Corp.,* 392 F.3d 1064, 1070 (9th Cir. 2004).

The appropriate rejection date is the date the Motion was filed. As AIC references, on December 24, 2025, AIC and the Debtor filed a *Stipulation by and Among ColorArt, LLC and AIC Regarding the Rejection of Leases and Other Relief* [ECF No. 226, approved by Court at ECF No. 232] (the "Rejection Stipulation"). *See* Objection, p. 5, ll. 19-24. In that Stipulation, the parties expressly acknowledged that Debtor had vacated the Morton Property and intended to seek rejection of the Morton Lease, but the parties could not reach agreement on that rejection. *See* ECF No. 226, n.1. The Morton Property had been vacated since January 2025, and Debtor pursued rejection promptly and efficiently. The remaining dispute—whether the Morton Lease and Delaware Lease are inseparable—was preserved for Court determination. Because the estate has derived no benefit from the Morton Property since vacatur, AIC should not be permitted to impose

an administrative rent burden for a period after Debtor provided clear notice and sought rejection.

### III. CONCLUSION

For the foregoing reasons, Debtor respectfully requests that the Court (i) overrule the Objection, and (ii) enter an order granting the Motion with respect to the Morton Lease and granting such other and further relief as the Court deems just and proper.

DATED this 20th day of January, 2026.

GARMAN TURNER GORDON LLP

By: /s/ Teresa Pilatowicz
GREGORY E. GARMAN, ESQ.
TERESA M. PILATOWICZ, ESQ.
MARY LANGSNER, PH.D.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
*Counsel to the Debtors*